J-S68001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.W.P., III, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.H., MOTHER | No. 1823 EDA 2015 |

Appeal from the Decree Entered May 19, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-00000434-2014,
FID: 51-FN-384630-2009

BEFORE:  BENDER, P.J.E., DONOHUE, and MUNDY, JJ.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 07, 2015**

L.H. (Mother) appeals from the decree entered May 19, 2015, in the Court of Common Pleas of Philadelphia County, which involuntary terminated her parental rights to her minor son, R.W.P. (Child), born in March of 2012.[1] We affirm.

Child was removed from Mother's care due to Mother's history of seizures, and alleged prostitution.[2]  N.T., 5/19/2015, at 6.  Since that time,

---

[1] The parental rights of Child's father, R.P., were terminated by a separate decree entered July 14, 2015.  Father is not a party to the instant appeal.

[2] The record is not consistent as to the date Child was removed from Mother's care.  During the termination hearing, Community Umbrella Agency case manager, Jose De Jesus, testified that on "the 21st of this month [C]hild will be in care three years," meaning that Child was placed on May 21, 2012.  N.T., 5/19/2015, at 6.  However, the trial court states in its opinion that Child entered placement on "October 12, 2012[,] when he was three days old."  Trial Court Opinion, 7/24/2015, at 1.  Confusingly, as noted *supra*, Child was born in March of 2012.  The statement of facts attached to the petition to terminate Mother's parental rights indicates that Child was placed in the care of his paternal grandmother shortly after his birth in March of 2012, but that the paternal grandmother later requested kinship

Child has resided with his paternal grandmother. *Id.* On August 20, 2014, the Philadelphia Department of Human Services (DHS) filed a petition to terminate Mother's parental rights to Child involuntarily. A termination hearing was held on May 19, 2015, during which the trial court heard the testimony of Community Umbrella Agency case manager, Jose De Jesus, and Mother. Following the hearing, the court entered its decree terminating Mother's parental rights. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother now raises the following issues for our review.

1. Did the [t]rial judge rule in error that the Philadelphia City Solicitor's Office meant [*sic*] its burden of proof that [Mother]'s parental rights to her children [*sic*] should be terminated[?]

2. Did the trial judge rule in error that the termination of [Mother]'s parental rights would best serve the needs and welfare of the children [*sic*] [?]

Mother's brief at 3.

Mother argues that DHS failed to present sufficient evidence to terminate her parental rights. *Id.* at 4-5, 9. Mother emphasizes that she completed parenting and anger management classes, and that she was receiving mental health treatment and visiting with Child. *Id.* at 4-6. Mother further contends that DHS failed to prove that she is continuing to engage in prostitution. *Id.* at 4, 6-7, 9. Finally, Mother asserts that the trial

---

care assistance in September of 2012, and that an order of protective custody was granted on October 12, 2012.

- 2 -

court failed to consider the bond between Mother and Child, and that severing that bond will have a "severe impact." *Id.* at 7-8.

We consider Mother's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b).  We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).  Here, we analyze the court's decision to terminate under Sections 2511(a)(8) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \*\*\*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> \*\*\*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). "Notably, termination under Section 2511(a)(8), does not require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted).

Instantly, the trial court concluded that DHS presented clear and convincing evidence that the parental rights of Mother should be terminated. Trial Court Opinion, 7/24/2015, at 8. The court reasoned that Child has been in care for almost his entire life, and that Mother has failed to remedy the conditions that resulted in Child's removal. *Id.* at 8-9. Specifically, the court found that Mother has failed to properly address her seizures, and that Mother has continued to post suggestive advertisements on social media websites. *Id.* at 9, 11. The court further found that Mother is not able to

provide for Child financially, that Mother has failed to improve her parenting skills, and that Mother does not properly interact with Child during visits. *Id.* at 10.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the termination hearing, Community Umbrella Agency case manager, Jose De Jesus, testified that he was assigned to this matter on April 20, 2015. N.T., 5/19/2015, at 9. Mr. De Jesus explained that Mother was required to complete several Family Service Plan objectives. Specifically, Mother was asked to complete parenting and anger management classes, and to provide evidence that she completed the classes. *Id.* at 8, 11. Mother also was asked to continue receiving treatment for her seizures, and to continue receiving mental health treatment through Hispanic Community Counseling Services. *Id.* at 10. Mr. De Jesus stated that Mother successfully completed three parenting programs, and that Mother provided him with documentation indicating that she is receiving mental health treatment.[3] *Id.* at 8, 11. However, Mother's documentation did not indicate how frequently Mother had been receiving treatment, or what the nature of that treatment was. *Id.* at 11. Mother

---

[3] When counsel for Mother asked Mr. De Jesus whether Mother had completed anger management classes, counsel for Father objected on the basis that the question had been asked and answered. N.T., 5/19/2015, at 21. The objection was sustained. *Id.* However, the record reveals that Mr. De Jesus had not previously been asked about anger management. Thus, Mr. De Jesus was never able to state whether Mother had complied with this objective.

failed to provide documentation indicating that she is receiving regular treatment for her seizures. *Id.* at 10. As explained by Mr. De Jesus, "She's only provided me with an emergency documentation for Jefferson Hospital that she had to miss a visit because she had a seizure and was going on her way to the hospital, that's the only documentation I have on record." *Id.* Mother provided Mr. De Jesus with this documentation on May 8, 2015. *Id.* Mr. De Jesus later added that, "[t]here is documentation in the record but not to me. It's in the file that she is certified to have seizures." *Id.* at 17. Mother has not asked Mr. De Jesus to provide services with respect to her seizures, although Mother did inform Mr. De Jesus that she intends on having a family member act as her nurse. *Id.* at 20-21.

Mr. De Jesus further testified concerning Mother's visitation with Child. Mother receives weekly supervised visits with Child. *Id.* at 8. Mother was never offered unsupervised visits, because "she's almost [*sic*] on the phone, or isn't interacting properly with the child." *Id.* Mr. De Jesus testified inconsistently with respect to Mother's attendance at visits. Mr. De Jesus initially noted that he reviewed the file in this matter prior to testifying, and that the file indicated that Mother attended her visits consistently prior to his involvement in the case. *Id.* at 9-10. Mr. De Jesus later stated that Mother's visits "weren't consistent for like three workers before me . . . ." *Id.* at 16. Mr. De Jesus then stated again that his review of the file showed that Mother "was consistent on visit[s] . . . ." *Id.* at 22. Mr. De Jesus

noted that Child is doing well with his paternal grandmother, and calls his paternal grandmother "mother" or "mom." *Id.* at 15. He opined that Child would not be harmed if Mother's parental rights are terminated. *Id.*

Finally, Mr. De Jesus testified concerning possible prostitution by Mother. *Id.* at 11-15, 21. Mr. De Jesus was presented with several exhibits, which are included in the certified record on appeal. Specifically, Mr. De Jesus was presented with a printout of Mother's Facebook page from October 17, 2012. *See* Child Advocate Exhibit 1. The printout includes numerous suggestive photographs of Mother. The printout further includes several suggestive messages posted by Mother. For example, Mother posted one message stating, "I[']M DOING LAP DANCES AT MY HOUSE AND SO MUCH MORE CALL ME . . . FOR MORE INFO." Mother later posted another message stating, "I[']M LIVE IN WEST PHILLY. IF YOU GOT 120 CALL ME . . . RITE [*sic*] NOW. I[']M LOOKING TO BE SEEN RITE [*sic*] NOW NO GAMES." Mr. De Jesus also testified concerning an online classified ad posted by Mother on November 16, 2013. *See* DHS Exhibit 3. The ad includes a picture of Mother, and states, "[]â™¥Speical [*sic*] $65 for 20 minsâ™¥ [*sic*]." Finally, Mr. De Jesus identified Mother as the subject of several suggestive photos, which were printed from the internet on February 18, 2015. *See* DHS Exhibits 1 and 2. There is no date indicating when the pictures were posted, nor is there any text with the pictures. It is not clear what type of website on which the pictures were posted.

Mother testified that she completed two parenting classes. N.T., 5/19/2015, at 23-24. Mother also completed "a class for the foster parent and the mother to get along to interact with the child." *Id.* at 24-25. Mother stated that she completed an anger management program, and is receiving therapy at Hispanic Community Counseling Services. *Id.* at 25. Mother did not specify how often she attends therapy, but stated that she goes "basically when I want to go . . . ." *Id.* With respect to her seizures, Mother acknowledged that her condition is "not gonna go away." *Id.* at 26. However, Mother emphasized that her illness "does not make me a bad mother," and that she is able to clean her home, cook for herself, and pay her bills with Supplemental Security Income. *Id.* Mother noted that she is applying for her cousin to act as her nurse. *Id.* Mother claimed that she is bonded with Child, and that Child calls her "mother." *Id.* at 27.

Thus, the record supports the conclusion of the trial court that Child has been removed from Mother's care for over twelve months, and that Mother has failed to remedy the conditions that led to Child's removal. At the time of the termination hearing, Child had been out of Mother's care for at least two and a half years, and probably longer. During that time, Mother failed to demonstrate that she is receiving appropriate medical treatment for her seizures, that her seizures are under control, and that she is capable of ensuring Child's safety while he is in her care. Mother also has continued to

display inadequate parenting skills, in that she does not interact properly with Child during visits.

The record further confirms that it would best serve the needs and welfare of Child to terminate the parental rights of Mother. Given Mother's disinterest in parenting Child during visits, and given her apparent failure over the course of years to obtain appropriate medical care, there is no realistic hope that Mother ever will be able to provide for Child. Moreover, Child has spent the majority of his life residing with his paternal grandmother, and Child considers his paternal grandmother to be his mother. Removing Child from his paternal grandmother at this point would be devastating to Child, as he would be ripped away from the only family he has ever known. As our Supreme Court has explained, this Court must accept the findings of the trial court if they are supported by the record, and we may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. Because the trial court's decision in the instant matter is supported by competent evidence, we must affirm the termination of parental rights.[4]

---

[4] We agree with Mother that the record does not support the trial court's finding that Mother has continued to post suggestive advertisements on social media websites. Child Advocate Exhibit 1 is a printout of Mother's Facebook page from October of 2012, while DHS Exhibit 3 is an online classified ad from November of 2013. At the time of the termination hearing, these postings were over two and a half years old, and one and a half years old, respectively. DHS Exhibits 1 and 2 are pictures against a white background with no accompanying text. While there is a date on the exhibits indicating that they were printed from the internet on February 18,

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

---

2015, there is no indication as to when the pictures were actually posted. It is not clear what type of website on which the pictures were posted, nor is there anything about the pictures which would confirm that Mother was the one who posted them. Nonetheless, as detailed *supra*, the other evidence presented during the termination hearing was more than sufficient to affirm the termination of Mother's parental rights.

Here, the trial court found that Mother and Child do not have a parent/child bond, and that Child is bonded with his paternal grandmother. Trial Court Opinion, 7/24/2015, at 11. The court reasoned that it would best serve the needs and welfare of Child to terminate Mother's parental rights, so that Child can be adopted by paternal grandmother. *Id.* at 12. The court explained that terminating Mother's parental rights would not cause irreparable harm to Child, but that Child would be irreparably harmed if he were removed from his paternal grandmother. *Id.*

We again conclude that the orphans' court did not abuse its discretion. While Mother asserted that she shares a bond with Child, the trial court was free to reject this testimony. Child has been out of Mother care since he was about seven months old, at the latest, and, at the time of the termination hearing, Child was over three years old. It is unlikely that Child has a strong attachment or bond with Mother. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (observing that the relationship between K.Z.S. and his mother "must be fairly attenuated," given that K.Z.S. had been in foster care for most of his young life, and given that he had only limited contact with the mother during this time). Moreover, it is clear that any possible bond between Child and Mother is outweighed by Mother's inability to care for Child, and by Child's need for permanence and stability. *See C.D.R.*, 111 A.3d at 1220 (concluding that the appellant mother's bond with C.D.R was outweighed by the mother's "repeated failure to remedy her parental

incapacity," and by C.D.R.'s need for permanence and stability). Mother is not entitled to relief.

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child, we affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015